UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

V.                                    CRIMINAL ACTION NO. 2:22-CR-14-KHJ-MTP-1

JARVIN SUMMERALL

ORDER

Before the Court is Defendant Jarvin Summerall's [131] Motion to Vacate under 28 U.S.C. § 2255. The Court dismisses without prejudice the [131] Motion, grants Summerall an out-of-time appeal, and reinstates the criminal judgment on the docket. *See United States v. Cong Van Pham*, 722 F.3d 320, 327 (5th Cir. 2013).

I.  Background

Summerall's [131] Motion arises from his attempts to appeal his sentence.

In 2022, Summerall pleaded guilty to two counts of conspiracy to possess with intent to distribute methamphetamine. Superseding Indictment [29]; Plea Agreement [93]. In pleading guilty, he largely waived "the right to appeal the conviction and sentence imposed in this case, or the manner in which that sentence was imposed." [93] at 5. But he "reserve[d] the right to raise ineffective assistance of counsel claims." *Id.*

The Court sentenced Summerall on October 19, 2023. 10/19/2023 Min. Entry. At sentencing, his guideline range was life for one count and 480 months for the other. Presentence Investigation Report (PSR) [117] at 34. But the Court imposed a

downward variance, sentencing him to 400 months. *See* J. [121] at 2. The Court entered its [121] Judgment on October 25, 2023.

Summerall never filed a notice of appeal.

Instead, he filed this [131] Motion in May 2024, seeking an out-of-time appeal. His filings submitted that his former counsel "failed to file a notice of appeal after sentencing at [Summerall's] request." [131] at 4; *see also* Summerall Aff. [132-2] at 1.[1] The Court ordered an affidavit from former counsel, Order [134], who said:

> Undersigned counsel met with [Summerall] following sentencing and discussed his options for appeal, during which [Summerall] verbally communicated his desire <u>not</u> to appeal. Undersigned counsel advised [Summerall] of the merits of an appeal and also advised [Summerall] of the consequences of an appeal. Undersigned counsel advised [Summerall] that, pursuant to the PSR, his guideline range on Count 3 was actually life, and on Count 5, 40 years (480 months). Undersigned counsel advised [Summerall] that should an appeal be successful, he would then be back before the Court facing a potential life sentence—not the four hundred (400) months this Court assessed. [Summerall] voiced his understanding.

Former Counsel Aff. [135] at 1–2.

Given the competing accounts, the Court appointed Summerall counsel and held an evidentiary hearing. Order [138]. Four witnesses testified: (1) former counsel; (2) Summerall's father, Mr. Joe W. Sims; (3) Summerall's mother, Ms. Tammy Summerall; and (4) Summerall. The Court summarizes each witness' testimony.

---

[1] Despite his appeal waiver, Summerall wanted to appeal "based on the Government's use of 'ghost dope' to determine [his] sentence[] and the PSR's use of 'actual' versus 'mixture and substance' of methamphetamine based on policy grounds." [132-2] at 1.

Former counsel testified first. He said that he and Summerall spoke about an appeal "before sentencing and then right after sentencing." Tr. [141] at 6. But the only post-sentencing discussion occurred in the courtroom immediately after the sentencing and "wasn't a long conversation." *Id.* at 10. And during that conversation, Summerall was "frustrated that he got . . . 400 months." *Id.* at 7; *see also id.* at 11 (former counsel stating, "I believe I asked for, I thought, 180 months would be sufficient."). Former counsel could not remember whether he promised to go see Summerall. *Id.* at 7. But "a day or two after the judgment came down," former counsel tried to see him in Forrest County. *Id.* at 8–9. Someone at the front desk said that "the marshals are either here to get him or just got him," so former counsel never spoke with Summerall. *Id.* at 9. And former counsel could not recall seeing any messages from Summerall's parents before the 14-day deadline expired. *See id.* at 12; *see also id.* at 17 (saying that "it would be up to [former counsel's] secretary or paralegal" to relay those messages). But he admitted that he later reviewed his phone-messaging system and saw that Summerall's mother left a message five days after the judgment came down. *See id.* at 13–14. It said: "[Summerall] has been [sent] to Stone County and wants you to see him." *Id.* at 13.

Mr. Sims testified second. He said that Summerall called him soon after sentencing and said that "he wanted to appeal." *See id.* at 21. With Summerall's "time [to appeal] running out," Mr. Sims visited former counsel's office multiple times. *Id.* at 23–24. He left a message with former counsel's receptionist that Summerall was "looking for his papers for his appeal." *Id.* at 24.

3

Ms. Summerall testified third. She said that Summerall called within hours after his sentencing and said that "[h]e wanted an appeal," despite former counsel's advice. *Id.* at 32. The next day, Ms. Summerall left a message with former counsel's receptionist. *Id.* at 35. That message said that Summerall "wanted [former counsel] to come see him about an appeal and wanted his paperwork." *Id.* Ms. Summerall left at least two more messages with former counsel's office before the 14-day deadline expired. *See id.* at 36–37.

Summerall testified last. He said that he never spoke with former counsel about an appeal. *See id.* at 41. Before sentencing, "[t]here was no reason to talk about it"; Summerall did not know his sentence yet. *Id.* And after, Summerall "tried to talk" to former counsel but "didn't get it out" because marshals quickly removed Summerall from the courtroom. *Id.* at 41–42. Former counsel said: "I'm going to come see you." *Id.* at 42. After sentencing, Summerall asked his parents to contact former counsel about filing a notice of appeal, but his parents could not get in touch with former counsel. *See id.* at 43–44. As the hearing concluded, Summerall emphatically testified: "[H]e told me he was going to come see me, Your Honor. And that's all I'm asking. Because . . . that's my constitutional right, to have counseling." *Id.* at 47.

After the hearing, the Court reserved ruling. It now issues its written order.

II.   Standard

The Sixth Amendment guarantees criminal defendants "reasonably effective" legal assistance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (cleaned up). "A

4

defendant claiming ineffective assistance of counsel must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defendant." *Id.* at 476–77 (cleaned up).

That two-part test "applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal." *Id.* at 477. "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal, with no need for a further showing of his claims' merit, regardless of whether the defendant has signed an appeal waiver." *Garza v. Idaho*, 586 U.S. 232, 243–44 (2019) (cleaned up).

III. Analysis

Summerall has established both deficient performance and prejudice. So the Court grants him an out-of-time appeal.

1. Deficient Performance

Deficient performance turns on two questions. First, did former counsel "in fact consult[] with the defendant about an appeal"? *Flores-Ortega*, 528 U.S. at 478.[2] And second, if not, did former counsel have a "constitutionally imposed duty" to

---

[2] "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Flores-Ortega*, 528 U.S. at 478.

5

consult? *Id.* at 480. Here, the first answer is "no," and the second is "yes." The Court explains why below.

### A. Consultation

Former counsel did not consult with Summerall about an appeal. *Id.* at 478.

"Consult" is a term of art that requires *both* "advising the defendant about the advantages and disadvantages of taking an appeal" *and* "making a reasonable effort to discover the defendant's wishes." *Id.* For the sake of analysis, the Court assumes that former counsel adequately advised Summerall about the pros and cons of appealing.

The Court decides that no reasonable effort was made to discover Summerall's own wishes. The Court reaches that conclusion based on three factual findings. First, Summerall never expressed his own wishes about an appeal to former counsel. To be sure, the Court believes former counsel that Summerall "voiced his understanding" of former counsel's legal advice. [135] at 2. But the question remains whether—given that understanding—Summerall expressed his own wishes. The Court believes Summerall that he did not.[3] Second, former counsel

---

[3] The Court believes that for at least four reasons. For one, former counsel credibly testified that the discussion after sentencing "wasn't a long conversation," and Summerall "was . . . frustrated" about his 400-month sentence. [141] at 7, 10. Separately, Ms. Summerall credibly testified that—later that day—Summerall told her that he wanted to appeal despite former counsel's legal advice. *Id.* at 32. What's more, Summerall credibly testified that former counsel told him after sentencing that he "was going to come see [Summerall]." *Id.* at 42. That promise would have been unnecessary if all consultation had already occurred. And finally, Summerall credibly testified that former counsel "never" had the opportunity to ask, "do you want to file an appeal?" *Id.* at 47. Given that evidence—and the potential for misunderstanding Summerall's understanding as agreement—the Court finds that Summerall did not express his own wishes one way or the other.

6

never communicated with Summerall before the 14-day deadline expired. That was in part because of others' decision to transport Summerall, without telling former counsel where he was going. [141] at 8–9. And third, former counsel never communicated with Summerall's family before the 14-day deadline expired. Former counsel likely could have figured out Summerall's whereabouts (and desire to appeal) by calling Summerall's father. *See id.* at 17 (former counsel testifying that Mr. Sims left multiple "messages prior to sentencing," which suggests that former counsel had Mr. Sims' contact information). And former counsel's office missed multiple messages from Summerall's parents within the 14-day window, which also would have alerted former counsel to Summerall's whereabouts (and desire to appeal). *See, e.g., id.* at 31–33 (Ms. Summerall credibly testifying as much).

Given those findings, the Court concludes that no reasonable effort was made to discover Summerall's own wishes about an appeal. *Flores-Ortega*, 528 U.S. at 478; *see also, e.g., Thompson v. United States*, 504 F.3d 1203, 1207 (11th Cir. 2007) ("Simply asserting the view that an appeal would not be successful does not constitute 'consultation' in any meaningful sense."). And so former counsel did not consult with Summerall. *Flores-Ortega*, 528 U.S. at 478.

B. Duty to Consult

The Court thus turns to the second question: whether former counsel had a "constitutionally imposed duty" to consult. *Id.* at 480. He did.

A duty to consult arises "when there is reason to think . . . that this particular defendant reasonably demonstrated to counsel that he was interested in

appealing." *Id.* "In making this determination, courts must take into account all the information counsel knew or should have known." *Id.* Courts often find a duty to consult when a defendant communicated "something to his counsel indicating that he had an interest in appealing," showing that he wanted to "do[] something to change the outcome of his sentencing through additional proceedings." *Cong Van Pham*, 722 F.3d at 325 (cleaned up). "The Supreme Court predicted that district courts would find a duty to consult 'in the vast majority of cases.'" *Id.* at 324 (quoting *Flores-Ortega*, 528 U.S. at 481).

Summerall reasonably demonstrated that he was interested in appealing. The Court makes three factual findings relevant to that conclusion. First, Ms. Summerall left a message with former counsel's receptionist one day after sentencing. [141] at 34–35 (Ms. Summerall credibly testifying as much). The message said that Summerall "wanted [former counsel] to come see him about an appeal." *Id.* at 35. Second, Ms. Summerall left a message with former counsel five days after the judgment came down. *Id.* at 13–14. The message said: "[Summerall] has been [sent] to Stone County and wants you to see him." *Id.* And third, Summerall was "frustrated that he got . . . 400 months" (rather than the 180 months that former counsel believed sufficient). *Id.* at 7, 11 (former counsel credibly testifying as much).

Given "all the information [former] counsel knew or should have known," Summerall "reasonably demonstrated . . . that he was interested in appealing."

*Flores-Ortega*, 528 U.S. at 480; *see also Cong Van Pham*, 722 F.3d at 324. So former counsel had a duty to consult.[4]

* * *

In short, no reasonable effort was made to discover Summerall's own wishes, even though Summerall reasonably demonstrated that he was interested in appealing. Summerall has established deficient performance.

2. Prejudice

He has established prejudice, too.

"[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

> [W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal, with no need for a further showing of his claims' merit, regardless of whether the defendant has signed an appeal waiver.

*Garza*, 586 U.S. at 243–44 (cleaned up); *see also United States v. Tapp*, 491 F.3d 263, 265–66 (5th Cir. 2007). While not dispositive, "evidence that . . . the defendant in question promptly expressed a desire to appeal will often be highly relevant." *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (cleaned up).

---

[4] "The guilty plea and appeal waiver might have limited [Summerall's] appellate options, but they did not relieve [former] counsel of the duty to consult about those options once [Summerall] had reasonably demonstrated his interest in an appeal." *Cong Van Pham*, 722 F.3d at 326.

Summerall has established that, but for the failure to consult, he would have appealed. The Court makes three factual findings relevant to that conclusion. First, Summerall told both of his parents that—despite former counsel's legal advice—he wanted to file a notice of appeal. *See, e.g.*, [141] at 34 (Ms. Summerall credibly testifying that she shared former counsel's legal advice with Summerall, who responded that he still "wanted an appeal"). Second, within days of his sentencing, Summerall asked his parents to tell former counsel that Summerall "want[ed] to file a notice of appeal." *Id.* at 44–45. And third, Summerall was "frustrated" about the length of his sentence. *Id.* at 4; *see also id.* at 38 (Ms. Summerall credibly testifying that Summerall "wanted to appeal because he wanted his time lessened").

For those reasons, Summerall has shown that the failure to consult "deprive[d Summerall] of an appeal that he otherwise would have taken." *Garza*, 586 U.S. at 242 (cleaned up). So Summerall has established prejudice, too.

\* \* \*

At bottom, Summerall "has shown that he was prejudiced by his [former] counsel's constitutionally ineffective failure to consult with him about an appeal." *Cong Van Pham*, 722 F.3d at 327. The Court therefore follows the Fifth Circuit's "instructions to dismiss without prejudice . . . the [Section] 2255 motion for which the out-of-time appeal was granted, to grant an out-of-time appeal, and to reinstate the criminal judgment on the docket." *Id.* (cleaned up).

IV.     Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court DISMISSES without prejudice Summerall's [131] Motion, GRANTS Summerall an out-of-time appeal, and REINSTATES the criminal judgment on the docket.

SO ORDERED, this 18th day of March, 2025.

s/ <i>Kristi H. Johnson</i><br>
UNITED STATES DISTRICT JUDGE